

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 18, 2022

**BY ECF**
The Honorable P. Kevin Castel
United States District Judge
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Pablo Jaramillo*, S1 21 Cr. 639 (PKC)

Dear Judge Castel:

      The Government respectfully submits this letter in advance of sentencing. The Government respectfully submits that an incarceratory sentence below the stipulated Guidelines range of 87 to 108 months' imprisonment is sufficient but not greater than necessary to serve the purposes of sentencing.

## I. OFFENSE CONDUCT

      The defendant participated in a conspiracy that trafficked cocaine in and around the New York City area in the spring and early summer of 2021. In May 2021, another coconspirator ("CC-1") recruited the defendant into the conspiracy. (*See* PSR ¶ 10). The defendant's cousin introduced the defendant to CC-1, who was based in Florida. CC-1 knew that the defendant operated a restaurant in New Jersey, and CC-1 asked whether the defendant knew of any potential purchasers of cocaine in and around the New York and New Jersey area. In response, the defendant agreed to host at his restaurant a meeting attended by, among others, CC-1, another New Jersey-based coconspirator of CC-1's ("CC-2"), and an individual who the defendant believed could be a potential purchaser of cocaine ("CC-3"). (*See* PSR ¶ 10). The defendant was paid for brokering the introduction between CC-1 and CC-2, on the one hand, and CC-3, on the other hand, and the defendant was supposed to receive a percentage of each kilogram of cocaine that CC-3 sold. (*See* PSR ¶ 10).

      In total, the conspiracy transported approximately 144 kilograms of cocaine to the New Jersey area. CC-3 sold some of those kilograms, but, on June 14, 2021, law enforcement seized approximately 123 kilograms after CC-2 attempted to sell approximately 10 kilograms in Manhattan to an individual who, unbeknownst to CC-2, was a confidential source of the Drug Enforcement Administration. (PSR ¶ 8).

## II. PROCEDURAL HISTORY AND GUIDELINES RANGE

      On June 24, 2021, the defendant was arrested. (PSR ¶ 12). The defendant waived indictment, and on October 28, 2021, the defendant was charged by information. (PSR ¶ 1). On December 15, 2021, the defendant pled guilty pursuant to a plea agreement to conspiring to

distribute and possess with intent to distribute five kilograms and more of mixtures and substances containing a detectable among of cocaine, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A). (PSR ¶¶ 2, 4). That charge typically carries a maximum term of imprisonment of life, a mandatory minimum term of imprisonment of ten years, a maximum term of supervised release of life, a mandatory minimum term of supervised release of five years, a maximum fine, pursuant to Title 18, United States Code, Section 3571 and Title 21, United States Code, Section 841(b)(1)(A), of the greatest of $10,000,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense, and a $100 mandatory special assessment. (PSR ¶¶ 65, 68, 72-73). Here, however, the defendant appears to meet the "safety valve" criteria set forth in 18 U.S.C. § 3553(f) and is therefore not subject to the mandatory minimum terms of imprisonment and supervised release. (PSR ¶¶ 65, 68).

The plea agreement and Probation agree on the Guidelines calculation. Pursuant to U.S.S.G. §§ 2D1.1(a)(5) and (c)(3), because the offense involved at least 50 kilograms but less than 150 kilograms of cocaine, the base offense level is 34. (PSR ¶¶ 5, 18). After a two-level decrease as a result of the safety-valve provisions and a three-level decrease for acceptance of responsibility, the defendant's total offense level is 29. (PSR ¶¶ 5, 19, 25-27).

In 2005, the defendant pled guilty to obstructing the administration of law or Government function, in violation of New Jersey state law, and was sentenced to a fine, in connection with his possession of false documents at a bar when he was 18. (PSR ¶ 29). Pursuant to U.S.S.G. § 4A1.2(c)(1), that conviction does not result in any criminal history points, so the defendant is in Criminal History Category I. (PSR ¶¶ 5, 29-30).[1]

As a result of the foregoing, the defendant's Guidelines range is 87 to 108 months' imprisonment, with no mandatory minimum term. (PSR ¶¶ 5, 66-67). Probation recommends a sentence of 36 months' imprisonment. (PSR at p. 20).

**III.  DISCUSSION**

Here, the combination of the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, and to afford adequate deterrence to criminal conduct, weighs in favor of a substantial term of imprisonment, but one that is below the stipulated Guidelines range of 87 to 108 months' imprisonment.

A substantial term of imprisonment is necessary to capture the nature and circumstances of the offense, to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment. The defendant hosted a meeting where he introduced individuals who he understood were arranging the transport of cocaine into the New Jersey area to an individual who he believed could purchase at least some of that cocaine for resale in the New York and New Jersey

---

[1] The defense's sentencing submission incorrectly states that the instant "case represents the defendant's first conviction for a crime." (Dkt. 26 at 1).

area. The defendant accepted payment for his role in the conspiracy. That is serious conduct deserving of punishment.

A substantial term of imprisonment is also necessary to afford adequate deterrence to criminal conduct, not only for the defendant specifically, but also for society generally. The defendant and others who participate in the trafficking of dangerous substances must understand that their actions negatively impact our communities and that those who perpetuate the drug problem in this Country will be punished appropriately.

At the same time, in the Government's view, a Guidelines sentence would be greater than necessary to serve the purposes of sentencing. The Government notes Probation's description of "mitigating factors" "suggestive of a low recidivism risk," such as the "non-violent nature of the instant offense," "the defendant's minimal criminal history," as "[t]he instant offense represents [his] first felony conviction," the defendant's "familial responsibilities," the fact that "he has maintained verifiable employment," and the fact that "he has remained fully compliant with the conditions of his pretrial release." (PSR at p. 21).

By contrast, the defense's request for home confinement would represent an unwarranted windfall for the defendant. (Dkt. 26 at 2). The defendant's participation in a conspiracy that trafficked over 100 kilograms of cocaine cries out for an incarceratory sentence.

## IV. CONCLUSION

The Government respectfully requests that the Court impose an incarcetory sentence below the stipulated Guidelines range of 87 to 108 months' imprisonment.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: *Samuel P. Rothschild*
Samuel P. Rothschild
Assistant United States Attorney
(212) 637-2504

cc:   Michael J. Nedick, Esq. (by ECF)